UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| NOE SOLIS GARCIA, et al., | No. C 11-02047 LB |
| Plaintiffs, | **ORDER REGARDING THE PARTIES' SEPTEMBER 4, 2012 JOINT DISCOVERY DISPUTE LETTER** |
| v. | |
| MARIO BANA, et al., | [Re: ECF No. 60] |
| Defendants. | |

Plaintiffs Noe Solis Garcia and Ernesto Santana brought this wage and hour action against defendants Mario Bana and Nancy Bana, the owners and operators of Ideal RV & Trailer Supply. On September 4, 2012, the court received notice of more discovery problems. *See* 9/4/2012 Joint Discovery Dispute Letter. In it, the parties describe three disputes, which the court addresses in turn below.

**I. Mr. Wang's Failure to Inform Defendants' Counsel that a Translator Would be Needed for Mr. Garcia's Deposition**

The first dispute concerns Mr. Garcia's deposition. As Defendants' counsel describes:

> Prior to the first day of [Mr.] Garcia's deposition, [Mr. Wang] never informed [Defendants'] counsel that [Mr.] Garcia would require an interpreter. Instead, [Mr. Wang] informed [Defendants'] counsel for the first time upon his and [Mr. Garcia's] arrival at the deposition that he would require an interpreter and facetiously suggested that [Defendants] 'should have known' that [Mr.] Garcia was a Spanish-speaking individual, and therefore require an interpreter. Because no interpreter was present or available, [Defendants were] forced to terminate and reschedule the deposition.

1  9/4/2012 Joint Discovery Dispute Letter, ECF No. 60 at 3.  Defendants' counsel asks the court to
2  order Mr. Wang to pay for the $475 in expenses that Defendants' needlessly incurred as a result of
3  the failed first attempt to depose Mr. Garcia. *Id*. at 4.  These expenses apparently include attorney's
4  fees, court reporter fees, and transcript fees. *Id*.

5  Mr. Wang does not dispute Defendants' counsel's description of the events. *See id*.  Rather, Mr.
6  Wang simply argues that Defendants' counsel "is equally at fault" for the failure to bring an
7  interpreter to Mr. Garcia's deposition.  Indeed, he appears to double-down on his argument that
8  Defendants' counsel "should have known" that Mr. Garcia would need an interpreter, as he states
9  that he has "reasons to believe that Defendants and their counsel are aware that [Mr.] Garcia is not
10 proficient in English enough to be deposed within the assistance of an interpreter." *Id*.

11 Mr. Wang's argument in this regard is unsupported and illogical.  It is unsupported because
12 although Plaintiffs' counsel says that he has "reasons to believe" that Defendants knew Mr. Garcia
13 does not speak English very well, he fails to state any of these "reasons."  And to the extent his
14 "reasons" include, as his statements can be read to imply, that Defendants' counsel "should have
15 known" that Mr. Garcia would need a translator because Mr. Garcia has a Spanish-language last
16 name, that is not sufficient.

17 What is true is that Mr. Wang knew that Mr. Garcia speaks limited English and that a translator
18 would be needed for his deposition.  Still, Mr. Wang points out that Defendants' counsel does not
19 cite authority for the specific point that it is the deponent's responsibility to inform the deposing
20 party that he or she will need a translator, and the court has not found any, either.[1]  Thus, his
21 argument that the parties are equally at fault for the failure to communicate holds some water.  (That
22 said, Mr. Wang's proclamation that "[i]t is incumbent on all counsel to corporate [sic] in [a]
23 professional manner in conducting discoveries [sic]" is perhaps a bit-self-serving at this point, given
24 his prior conduct in this action.)  Under the circumstances, the court **ORDERS** Mr. Wang to pay

---

[1] Defendants' counsel does cite authority for the broader proposition that a court may sanction a party for bad faith resulting in delay or disruption, *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991), but the court is not completely convinced that Mr. Wang acted in bad faith, rather than with incompetence or disorganization.

C 11-02047 LB
ORDER
2

**U**NITED **S**TATES **D**ISTRICT **C**OURT
For the Northern District of California

half of the incurred costs, or $238, to Defendants' counsel, no later than September 30, 2012.

**II. Mr. Wang's Deposition Day Document Dump and His Failure to Supplement Mr. Garcia's Responses to Defendant's RFPs**

Defendants' counsel also complains about Mr. Wang's production of documents prior to Mr. Garcia's aborted deposition. As she describes:

> To add insult to injury, [Mr. Wang] claimed, upon arriving at the deposition, that Plaintiffs had produced 70 additional pages of documents to [Defendants'] counsel['s] office via email. WHen [Defendants' counsel] confirmed with her office that [Defendants] had only received three pages of documents from Plaintiffs during the entire duration of this litigation, [Mr. Wang] changed his story to say that it was, in fact, 24 pages of documents, and suggested that he could 'produce' them to [Defendants] by printing them out at the Court reporter's office on the day of [Mr.] Garcia's deposition. This is after [Mr. Garcia] has submitted not one, but two, sets of responses to [Defendants'] Requests for Production [of Documents] claiming that he has not responsive documents in his possession.

*Id*. at 3.

Mr. Wang does not address Defendants' counsel's complaint in his portion of the 9/4/2012 Joint Discovery Dispute Letter.

The court sympathizes with Defendants' counsel. Producing documents right before a deposition, which presumably are relevant to that deposition, without any explanation for doing so at that time, is completely unprofessional and suggests of bad faith. *See* Cal. Attorney Guidelines of Civility and Professionalism, § 9(b)(6), *available at* http://www.saccourt.ca.gov/local-rules/docs/guidelines-civility-professionalism.pdf (last accessed on Sep. 24, 2012) ("An attorney should not delay in producing a document in order to prevent opposing counsel from inspecting the document prior to or during a scheduled deposition or for some other tactical reason."). Moreover, as Defendants' counsel suggests, that the production of the documents has been made means that Mr. Garcia's RFP responses are no longer up-to-date, and a party has a continuing obligation to supplement his or her discovery responses. *See* Fed. R. Civ. P. 26(e)(1).

While Mr. Wang's production of documents on the day of Mr. Garcia's (cancelled) deposition certainly does not comply with the applicable discovery rules, it appears that Defendants were not terribly prejudiced by it because, as mentioned above, Mr. Garcia's deposition had to rescheduled

1  because no interpreter was there. Thus, by the time Defendants actually took Mr. Garcia's
2  deposition, the court presumes that Defendants had a reasonable opportunity to review the
3  documents. That said, given the obligation to supplement discovery responses, Mr. Garcia is
4  **ORDERED** to supplement his responses to Defendants' RFPs within 3 days from the date of this
5  order.

### III. Plaintiffs' Counsel's Objection to a Question about Whether Mr. Garcia Declared Alleged Cash Payments on His Income Taxes

Defendants' counsel also argues that Mr. Garcia's counsel improperly instructed him not to respond to certain questions during his deposition. *Id*. at 1-3.

As an initial matter, the court notes two things. First, the court notes that it was not Mr. Wang, but a Mr. Bedolla, who defended Mr. Garcia during his deposition (which did in fact occur after a translator was obtained). Second, while Defendants' counsel described three questions to which Mr. Garcia was instructed not to respond, the parties have agreed that Mr. Garcia will respond to the first two questions through special interrogatories. Thus, only the third question, and Mr. Garcia's refusal to respond to it, is at issue here.

The transcript of Mr. Garcia's deposition shows the following line of questioning:

> Q. The cash payments that you received for work on Saturdays, did you keep any kind of written record of those payments?
>
> A. Well, like I said previously, a little while ago, the cards that were accumulated, after five Saturdays, he would take them and would tear them up and throw them in the garbage.
>
> Q. Other than those cards, did you yourself keep any other kind of written record for the cash payments you received for your work on Saturdays?
>
> A. No, because he wouldn't let us take a photocopy of the card.
>
> Q. Did you keep any kind of written notes, like a journal or a diary of those cash payments?
>
> A. No.
>
> Q. Did you report those payments on your taxes?
>
> MR. BEDOLLA: Objection. Violation of the rights to privacy.
>
> Q. Did you keep any kind of written records of either the hours that you worked at Ideal RV or the amount you were paid by Ideal RV?

UNITED STATES DISTRICT COURT
For the Northern District of California

A.  No, ma'am.

*Id.* at 21.

Subject to the limitations imposed by subsection (b)(2)(C), under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."  Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*.  However, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

In addition, when a claim that arises under California law implicate a party's privacy rights, courts engage in a careful balancing of the right of privacy against the need for discovery. *See Rodriguez v. Barrita, Inc.*, No. 09–04057 RS–PSG, 2011 WL 5854397, at *2 (N.D. Cal. Nov. 21, 2011) (citing *2IX Capital Ltd. v. Werra*, Case No. C06–04135, 2008 WL 753907, at *1 (N.D. Cal. Mar. 19, 2008).  And while tax returns do not enjoy an absolute privilege from discovery, *see Premium Service Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (citing *St. Regis Paper Co. v. United States*, 368 U.S. 208, 219 (1961))), the Ninth Circuit recognizes "a public policy against unnecessary public disclosure [of tax returns] to encourage taxpayers to file complete and accurate returns," *id*. at 229.  *See also Rodriguez*, 2011 WL 5854397, at *2.  "Accordingly, the Court may only order the production of [a party's] tax returns if they are relevant and when there is a compelling need for them because the information sought is not otherwise available." *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497–98 (N.D. Cal. 2003) (citing *Gattegno v. Pricewaterhousecoopers, LLP*, 205 F.R.D. 70, 71–72 (D. Conn. 2001); *Fort Washington Resources,*

*Inc. v. Tannen*, 153 F.R.D. 78, 80 (E.D. Penn. 1994); *Terwilliger v. York Int'l Corp.*, 176 F.R.D. 214, 216–17 (W.D. Va. 1997); *Flores v. Albertsons, Inc.*, 2002 WL 1163623 at *3 (C.D. Cal. 2002)).

The parties appear to agree that the legal standard described above applies here. Defendants' counsel thus argues that Mr. Garcia should be required to provide an answer to whether he reported the cash payments, which he alleges he received for the work he alleges he did on Saturdays, on his income taxes. *Id*. at 2-3. Defendants' counsel says that it is entitled to this information because there is "no other way of ascertaining the alleged existence or amount of these purported cash payments," and because, if Mr. Garcia did not declare those cash payments on this tax returns, Defendants are entitled to use that admission to argue that Mr. Garcia received no such cash payments. *Id*. at 3. Mr. Wang, on the other hand, argues that Defendants have not demonstrated a compelling need for Mr. Garcia's answer. *Id*. at 4. He argues that Defendants simply "may refer to their payroll records to establish the existence of no[n-]existence of such cash payments" and that Defendants can subpoena other of their employees to testify to the extent of Mr. Garcia's work on Saturdays. *Id*.

The court agrees with Defendants' counsel that Mr. Garcia must provide an answer to the question posed to him. Here, one of Mr. Garcia's allegations is that he worked for Defendants on Saturdays, was not paid fairly for it, and that Defendants paid him in cash to conceal these facts. And one of Defendants' defenses is that Mr. Garcia was not forced to work on Saturdays and, even if he did, they did not pay him unfairly for it. In other words, information that could be used to show whether Mr. Garcia worked on Saturdays, how many hours he worked on them, and how much money he was paid for working on them, is relevant to the parties' claims and defenses. Mr. Wang's statement that Defendants can simply refer to their payroll records, then, is unhelpful because, under Mr. Garcia's theory of the case, the Saturday hours would not appear on Defendants' payroll records. And his statement that Defendants can simply depose Mr. Garcia's co-workers is not entirely helpful because those workers likely would not have information about how often, exactly, Mr. Garcia allegedly worked on Saturdays, how many hours he did so, or how much money he was paid for it. The court therefore finds that Defendants have shown a compelling need for Mr. Garcia's answer to whether he reported the cash payments on his incomes taxes and that this

1  information is not otherwise available.

2  Accordingly, the court **DIRECTS** Defendants to serve a special interrogatory on Mr. Garcia that
3  asks him whether or not he declared any cash payments received from Defendants for work on
4  Saturdays on his income tax returns.  Mr. Garcia is **ORDERED** to provide Defendants with an
5  answer to this special interrogatory within 3 business days of being served with it.

6  **IT IS SO ORDERED.**

7  Dated: October 2, 2012

8  _____
   LAUREL BEELER
   United States Magistrate Judge

C 11-02047 LB
ORDER
7